Frank J. BILLOTTI, Petitioner–
Appellant,

v.

Carl LEGURSKY, Warden,
Respondent–Appellee.

No. 91–6346.

United States Court of Appeals,
Fourth Circuit.

Argued July 8, 1992.

Decided Sept. 8, 1992.

As Amended Oct. 29, 1992.

Franklin Dorrah Cleckley, Morgantown, W.Va., argued (Barbara H. Lupton, Masters & Taylor, L.C., Charleston, W.Va., on the brief), for petitioner-appellant.

Joanna Irene Tabit, Deputy Atty. Gen., Charleston, W.Va., argued (Mario J. Palumbo, Atty. Gen.), for respondent-appellee.

Before WILKINSON, NIEMEYER, and HAMILTON, Circuit Judges.

## OPINION

WILKINSON, Circuit Judge:

Frank Billotti was found guilty of first-degree murder by a West Virginia jury. The jury declined to make a recommendation of "mercy," and the trial court accordingly imposed a sentence of life without possibility of parole. In this petition for habeas corpus, Billotti claims, among other things, that West Virginia's system of discretionary appeals and lack of standards for jury recommendations of mercy have deprived him of due process. We believe, however, that West Virginia's procedures comport with the requirements of due process and thus affirm the district court's dismissal of the petition.

### I.

Sometime between 10:00 P.M. and 2:00 A.M. on the night of October 8, 1982, Frank Billotti shot and killed his wife, Carolyn, and their daughters, Andrea and Francie. After shooting his family, Billotti shot himself in the head. Billotti lost an eye, but survived to stand trial.

At trial, Billotti did not contest that he had in fact shot his wife and daughters. His sole defense was one of insanity. Billotti testified that for six or seven years before the murders, he felt that someone was out to get him, and that this feeling had intensified during the summer of 1982. He claimed that during the period leading up to the murders he had been smoking marijuana daily and taking amphetamines prescribed for weight loss. Billotti also claimed that he had been awake for three days and three nights prior to the shootings. On the evening of the killings, he had seen visions and had passed out twice. Petitioner testified that after regaining consciousness the second time, he believed that an enemy was attacking his family. He picked up a .45 pistol in the living room, but put it down and ran into the bedroom. Believing that someone was attempting to get into the bedroom, Billotti picked up his shotgun and fired.

Trooper Reyes of the West Virginia Department of Public Safety was assigned to investigate the Billotti home after the shootings. Reyes testified that he found Carolyn and Andrea backed up against a hallway wall and that he found Francie face down in the hallway; she had been shot from behind. In addition, Reyes found six shell casings and a shotgun in the Billotti home.

Three psychiatrists testified that, in their opinion, Billotti did not appreciate the wrongfulness of his acts at the time of the shooting. The doctors disagreed, however, on a diagnosis of petitioner's condition as well as on the effect of petitioner's drug usage. In addition, the record suggests that petitioner gave inconsistent accounts of the evening's events to the psychiatrists. Dr. Sine, who examined Billotti at the request of the state, testified that during the examination Billotti said that he had snorted crank (a crystalline amphetamine) for four days before the shooting. Billotti had not shared this fact with the other two psychiatrists, however. The state also presented several lay witnesses who testified as to Billotti's seemingly normal behavior during the time leading up to the shootings. In addition, several witnesses testified to petitioner's lucidity the day after the shooting. Drs. Rasmussen and MacIntyre, who treated Billotti for his gunshot wound, testified that he was alert, responsive and well-oriented.

The jury rejected petitioner's claim of insanity, and Billotti was convicted on three counts of first degree murder on December 21, 1983. Pursuant to West Virginia law, the trial court submitted to the jury the question of whether Billotti should be

granted "mercy," which would make parole available to Billotti. The jury declined to recommend mercy, and Billotti was accordingly sentenced to life imprisonment without possibility of parole. In September, 1984, Billotti filed a petition for appeal with the West Virginia Supreme Court of Appeals, which declined to grant the appeal after briefing and oral presentation. That petition was dismissed in an unpublished order without a decision on the merits.

After exhausting his remedies on state collateral review, Billotti then filed the instant petition in the district court for the Northern District of West Virginia. He contended that West Virginia's failure to grant an appeal as of right for criminal convictions is unconstitutional and that West Virginia's decision to leave recommendations for "mercy" to the unguided discretion of the jury allows jurors to act in an arbitrary and irrational fashion in determining the availability of parole. In addition, Billotti challenged the sufficiency of the evidence with respect to his sanity and other aspects of his conviction.

The district court dismissed the petition, and Billotti now appeals. We shall take up his claims in turn.

## II.

Billotti contends that West Virginia has denied him due process by affording a criminal defendant only a discretionary appeal from conviction. He claims that due process requires an appeal as of right, with full review on the merits by the West Virginia Supreme Court of Appeals. Reduced to its essence, petitioner's argument is that appeals as of right are constitutional, while discretionary appeals are not.

While the Supreme Court has stated on occasion that "[t]here is, of course, no constitutional right to an appeal" from a criminal conviction, see *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983), we need not speak here in such broad terms. It is sufficient for purposes of this case to hold that the West Virginia procedures in question did not deprive petitioner of his rights under the due process clause. The Supreme Court has recognized that "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation" in the field of criminal law. *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990). In a criminal case, due process will be violated only when a state's procedures "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Medina v. California*, ―― U.S. ――, ――, 112 S.Ct. 2572, 2577, 120 L.Ed.2d 353 (1992) (quoting *Patterson v. New York*, 432 U.S. 197, 202, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281 (1977)). Criminal defendants must be given "an adequate opportunity to present their claims fairly within the adversary system." *Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S.Ct. 1087, 1093, 84 L.Ed.2d 53 (1985) (quoting *Ross v. Moffitt*, 417 U.S. 600, 612, 94 S.Ct. 2437, 2445, 41 L.Ed.2d 341 (1974)). Under this basic test of due process, it is clear that the appeals procedures afforded by West Virginia gave Billotti an adequate opportunity to present his claims.

In West Virginia, the Supreme Court of Appeals provides the sole avenue of appellate review from courts of general jurisdiction. The decision to grant an appeal is discretionary with that court. *State v. Legg*, 151 S.E.2d 215, 218 (W.Va.1966). Nonetheless, the right to petition for appeal to the Supreme Court of Appeals is accompanied by an array of procedural protections. These procedural protections mirror the requirements that the United States Supreme Court has held to be mandatory when a state grants appeal as of right. The right to petition is guaranteed under W.Va. Const. Art. VIII, § 4, and denial of that right renders the conviction void. *State v. Eden*, 163 W.Va. 370, 256 S.E.2d 868, 875 (1979). Indigent criminal defendants are entitled to court-appointed counsel for their petition. *Rhodes v. Leverette*, 160 W.Va. 781, 239 S.E.2d 136, 140 (1977). *Accord Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Counsel's performance must meet constitutional standards of effectiveness. *State ex rel. Bratcher v. Cooke*, 155 W.Va. 850, 188

S.E.2d 769 (1972). *Accord Evitts v. Lucey*, 469 U.S. 387 (1985). Criminal defendants are entitled to a transcript for appeal. *State ex rel. Johnson v. McKenzie*, 159 W.Va. 795, 226 S.E.2d 721, 724 (1976). *Accord Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). West Virginia has thus provided Billotti with the same resources for discretionary review that the Supreme Court has held are required in cases involving appeal as of right.

West Virginia further provides criminal defendants an adequate opportunity to present their case in filing a petition for appeal. The rules of the Supreme Court of Appeals require a petition to state:

1. The kind of proceeding and nature of the ruling in the lower tribunal.

2. A statement of the facts of the case.

3. The assignments of error relied upon on appeal and the manner in which they were decided in the lower tribunal.

4. Points and authorities relied upon, a discussion of law, and the relief prayed for.

W.Va.R.App.P. 3(c). Petitions for appeal can be up to fifty pages, and longer with leave of the court. *Id.* In petitioning for appeal, a defendant can submit the transcript and other materials. W.Va.R.App.P. 4(c). In addition, a defendant is entitled to an oral presentation before the Supreme Court of Appeals. W.Va.R.App.P. 5. The West Virginia Constitution allows one justice to decide whether there is error in the record sufficient to justify the granting of appeal, but it was represented at argument before this court that the longstanding practice of the Supreme Court of Appeals is to have all five justices in attendance at oral presentations. *Compare* Fed. R.App.P. 34(a) (authorizing denial of oral argument). Petitioner's counsel has also conceded that the relevant procedural safeguards were observed here—Billotti's counsel filed a substantial petition on Billotti's behalf, accompanied by the transcript, and made an oral presentation before all of the justices of the Supreme Court of Appeals. In addition, West Virginia affords collateral review in criminal convictions, although that review is limited to claims of constitu-

tional dimension. Indeed, Billotti's claims were collaterally reviewed at some length and rejected by both the state Circuit Court and the West Virginia Supreme Court of Appeals. *See Billotti v. Dodrill*, 183 W.Va. 48, 394 S.E.2d 32 (1990).

It is plain that West Virginia has afforded Billotti an adequate opportunity to challenge the alleged errors in his trial. The Fourteenth Amendment does not authorize the federal courts to micromanage state criminal justice systems. *See Donnelly v. De Christoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). In our federal system, the states are allowed to structure their systems of criminal justice as they see fit, as long as their systems satisfy the basic demands of due process. There is often no one best way of doing things. A state practice thus "does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar." *Spencer v. Texas*, 385 U.S. 554, 564, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1967) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) (Cardozo, J.)). Whether West Virginia's procedures are the most desirable in the abstract is something we may never determine. It is enough that they serve the needs of the state which adopted them, and that they afford an ample measure of procedural fairness to criminal defendants seeking an appeal.

Indeed, petitioner has not explained exactly how an appeal as of right would have increased the accuracy of the determination that he received. *See Schall v. Martin*, 467 U.S. 253, 277, 104 S.Ct. 2403, 2416, 81 L.Ed.2d 207 (1984). In many jurisdictions, appeal as of right is conducted without oral argument, with screening by staff attorneys, or with limited briefing. We cannot see how such streamlined systems deliver a more meaningful opportunity to be heard than does West Virginia's system of discretionary appeals. *See* Daniel J. Meador, *Appellate Courts: Staff and Process in the Crisis of Volume* 168–171 (1974) (arguing that abbreviated modern appellate procedures are functionally indistinguishable from discretionary review). West Virginia

allowed Billotti to communicate his claims of legal error to the reviewing tribunal, accompanied by a record of the proceedings below necessary to evaluate his arguments. We believe that due process requires no more. *Accord Bundy v. Wilson,* 815 F.2d 125 (1st Cir.1987) (upholding New Hampshire's system of discretionary appeal while requiring an opportunity to submit transcript and brief).

### III.

■ Petitioner next contends that West Virginia's failure to provide guidelines for juries in making recommendations of "mercy" allows for arbitrary and irrational decisions, thus violating due process. Petitioner was convicted of first degree murder, which under West Virginia law carries a sentence of life imprisonment without parole. There is an exception, however: "[T]he jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole...." W.Va.Code § 62-3-15. Trial judges are required to instruct the jury that mercy is an option, *State v. Kopa,* 173 W.Va. 43, 311 S.E.2d 412, 422 (1983), but judges are forbidden to instruct the jury on what factors they should consider in determining whether to grant mercy. *State v. Miller,* 178 W.Va. 618, 363 S.E.2d 504, 509 (1987). Petitioner does not allege that the members of the jury relied on any improper basis in declining to recommend mercy. Rather, he invites this court to speculate that they might have.

■ We decline the invitation. At the outset we note that there exists no constitutional impediment to jury participation in the sentencing process. "Jury sentencing, based on each jury's assessment of the evidence it hears and appraisal of the demeanor and character of the accused, is a legitimate practice." *Chaffin v. Stynchcombe,* 412 U.S. 17, 32, 93 S.Ct. 1977, 1985, 36 L.Ed.2d 714 (1973). *See also Clemons v. Mississippi,* 494 U.S. 738, 745-46 (1990) (discussing the role of the jury in capital sentencing). Whether the jury exercises its judgment in a discretionary fashion or under guidance from the court seems to us more a question of West Virginia law than

one of federal due process. There is a long tradition of discretionary sentencing practice in this country. *See Dorszynski v. United States,* 418 U.S. 424, 440-441, 94 S.Ct. 3042, 3051-3052, 41 L.Ed.2d 855 (1974). Any modification of this practice has generally come through the legislative process, as happened at the federal level with the Sentencing Reform Act of 1984 and the subsequent promulgation of more uniform sentencing guidelines. Chapter II of Comprehensive Crime Control Act, Pub.L. No. 98-473, 98 Stat. 1837, 1976. The West Virginia legislature has seen fit, however, to individualize non-capital sentencing to the extent of vesting recommendations for "mercy" in the discretion of the jury; it would be improper to alter the legislative choice of the state through federal judicial writ. The hazards of this enterprise are underscored by the fact that petitioner has not suggested to us what standards we should require for the exercise of mercy by a West Virginia jury or even what standards he would have requested in this case. The jury was instructed to disregard passions, biases, or stricken testimony in its deliberations, and the jury further listened at great length to what was manifestly petitioner's strongest claim for mercy—his mental state at the time that he committed the acts. We can thus discern no violation of due process in the manner in which petitioner's plea for mercy was submitted in this case.

Nor do we think it avails petitioner that the Supreme Court has required instructions limiting jury discretion in *capital* cases. *See, e.g., Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). The Supreme Court has made it plain that the principle of those cases does not extend beyond the decision to impose capital punishment. "[L]egislatures remain free to decide how much discretion in sentencing should be reposed in the judge or jury in noncapital cases...." *Lockett v. Ohio,* 438 U.S. 586, 603, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (plurality opinion). To extend the many refinements of capital sentencing practice to non-capital cases would severely complicate the administration of criminal justice in state courts, and we decline to do so.

In any event—and contrary to petitioner's suggestion—the Supreme Court's jurisprudence in the area of capital sentencing does not cast into constitutional doubt West Virginia's provision for discretionary mercy. In a capital case, the jury must be allowed to consider any aspect of a defendant's character or record and any circumstances of the offense offered by a defendant as a mitigating factor. *Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990); *Mills v. Maryland,* 486 U.S. 367, 374–375, 108 S.Ct. 1860, 1865–1866, 100 L.Ed.2d 384 (1988). When the jury is considering whether to decline to impose the death penalty, "the States cannot channel the sentencer's discretion, but must allow it to consider any relevant information offered by the defendant." *McCleskey v. Kemp,* 481 U.S. 279, 306, 107 S.Ct. 1756, 1774, 95 L.Ed.2d 262 (1987). Wide discretion is given to the jury to choose life; indeed, the Court has struck down statutes mandating the death penalty. *See, e.g., Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). If the Constitution permits the jury wide discretion to be lenient in a capital case, it can hardly be read to prohibit a grant of discretionary mercy in this noncapital sentencing proceeding. The Court has required that the category of mitigating factors and evidence in a capital sentencing proceeding remain open-ended. *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). So too West Virginia may permissibly decide that "mercy" is one of those words that speaks in the end for itself, and that definition may ultimately limit the generosity with which mercy is granted.

### IV.

Billotti claims that the trial court erred when it failed to enter a verdict of not guilty by reason of insanity. He notes that the three psychiatrists who testified at trial all believed that he was incapable of appreciating the wrongfulness of his acts and argues that the jury should not have been allowed to disregard this expert testimony.

■ Under West Virginia law, once a defendant has brought forth substantial evidence of insanity, the state bears the burden of proving the defendant sane beyond a reasonable doubt. *State v. Milam,* 163 W.Va. 752, 260 S.E.2d 295 (1979). Our role in reviewing the state trial court's decision that the state has satisfied this burden is quite limited. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Allen v. Redman,* 858 F.2d 1194 (6th Cir.1988) (*Jackson* standard applies where sanity is an element of the offense). We think that a rational trier of fact could have so found.*

■ The question of Billotti's sanity at the time of the shooting was a factual one for the jury to decide, not a legal question that could be resolved solely on the basis of psychiatric testimony. *See Ake v. Oklahoma,* 470 U.S. 68, 81, 105 S.Ct. 1087, 1095, 84 L.Ed.2d 53 (1985). The psychiatrists did testify that petitioner was incapable of determining the wrongfulness of his acts at the time of the shootings. The weight of this testimony was substantially undercut, however, by the doctors' disagreement over the diagnosis and the relationship between Billotti's drug use and his mental impairment. In addition, Billotti appeared to have given inconsistent accounts to the doctors. As the district court noted, "the cred-

---

* The *Jackson* standard applies to defenses only when the state has made the absence of an affirmative defense an element of the crime. *Engle v. Isaac,* 456 U.S. 107, 120, 102 S.Ct. 1558, 1567–68, 71 L.Ed.2d 783 (1982). West Virginia would appear to have done so with the question of a defendant's sanity. "Under the *Milam* rule ... the State has the burden at trial to prove a defendant *sane* beyond a reasonable doubt, just as it must prove every other element of an offense." *State v. McWilliams,* 177 W.Va. 369, 352 S.E.2d 120, 130 (1986). We assume for the purposes of argument that the state has in fact done so; given our disposition of the case we need not decide this issue. Our view would not be authoritative in any case; the question, of course, is one of state law.

ibility of the testimony is obviously diminished in these circumstances." Moreover, a number of lay witnesses testified concerning their contemporaneous observations of Billotti and his seemingly normal behavior at that time. Some of those witnesses were friends or acquaintances of Billotti and his family. Viewing the evidence in the light most favorable to the prosecution, we cannot say that a rational trier of fact could not have concluded that Billotti was sane at the time of the shootings.

Petitioner next contends that he was entitled to a directed verdict because the prosecution failed to provide sufficient proof of malice and premeditation. The district court found that the evidence in the record supported "a pre-conceived plan of destruction whereby Petitioner decided to kill his family before ending his own life." Petitioner has offered nothing on appeal to persuade us that this finding was erroneous and we will not disturb it.

■ Finally, petitioner argues that the state trial court erred in its jury instructions concerning premeditation. Billotti nowhere explains in his briefs how this alleged trial error resulted in a deprivation of a federal right. "A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982). Questions of state law that do not implicate federal rights are not cognizable under § 2254. *Inge v. Procunier,* 758 F.2d 1010, 1014 (4th Cir.1985). Only the West Virginia Supreme Court of Appeals can correct this alleged state law error, and that court rejected Billotti's claim in his state habeas proceeding. *Billotti v. Dodrill,* 183 W.Va. 48, 394 S.E.2d 32, 41 (1990).

## V.

For the above reasons, the judgment of the district court is

AFFIRMED.