**Flint Gregory HUNT**

v.

**Sewall SMITH, J. Joseph Curran.**

**Civ. No. S 94–1276.**

United States District Court,
D. Maryland.

June 27, 1994.

See also, 312 Md. 494, 540 A.2d 1125; 321 Md. 387, 583 A.2d 218.

Judith R. Catterton, Catterton, Kemp & Mason, Rockville, MD and Thomas C. Morrow, Jensen, Morrow & Hassani, Towson, MD, for plaintiff.

J. Joseph Curran, Jr., Atty. Gen. of Maryland and Gwynn X. Kinsey, Jr., Asst. Atty. Gen., Office of the Atty. Gen., Cr. Appeals Div., Baltimore, MD, for defendants.

### MEMORANDUM OPINION

SMALKIN, District Judge.

This case involves a habeas corpus petition, filed by counsel on behalf of the petitioner, the convicted murderer of a Baltimore City policeman. The petitioner awaits execution of a death sentence. The facts of the murder are fully set forth, and prior judicial proceedings are fully chronicled, in the opinions of the Court of Appeals of Maryland that have affirmed petitioner's conviction and his capital re-sentencing. *See Hunt v. State,* 312 Md. 494, 498–99, 540 A.2d 1125, 1126–27 (1988), and 321 Md. 387, 583 A.2d 218 (1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991). Preceding the filing of this petition, a state post-conviction petition (PCPA) was denied by the trial court and leave to appeal was then denied by the highest appellate court of Maryland, the Court of Appeals. The Supreme Court refused to review that denial on *certiorari,* —— U.S. ——, 114 S.Ct. 1206, 127 L.Ed.2d 554 (1994). This 94–page petition, with 36 exhibits, followed. The respondent has answered the petition with all relevant transcripts and opinions, and the petitioner has filed an amendment and a reply. No evidentiary hearing is deemed necessary under Rule 8, Rules Governing Section 2254 Cases, in view of the fully developed record from the Maryland courts, as more particularly set forth below in connection with discussion of 28 U.S.C. § 2254(d). In light of the extensive briefing, no oral hearing on the petition is deemed necessary. Local Rule 105.6, D.Md.

The Court first addresses petitioner's invitation to expand the federal constitution to make full state-court appellate review of post-conviction denials mandatory, rather than permitting discretionary review (as in Maryland). The Court declines that invitation.

█ It has long been the rule that the federal constitution confers no right to a direct appeal from a criminal conviction. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983); *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894). The ancient rule of *McKane,* applied to direct appeals, has survived recent constitutional scrutiny in this Circuit, conducted through the twentieth century microscope of due process. *Billotti v. Legursky,* 975 F.2d 113, 115–17 (4th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1578, 123 L.Ed.2d 146 (1993). As a corollary principle, it is so clear as never to have been stated as a direct holding that there is no right to an appeal from the denial of post-conviction relief. Although a number of cases hold that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review, *see, e.g., Bryant v. Maryland,* 848 F.2d 492, 493 (4th Cir.1988), those cases are not exactly on point here, where the contention goes not to the conduct of a particular post-conviction proceeding, but the absence of it.

None of the constitutional arguments advanced in this connection by the petitioner has sufficient merit to warrant separate discussion, save one, which has insufficient merit to warrant relief. In particular, there is some merit to the argument that due process should, in capital cases, allow for one mandatory full appellate review of the conviction and sentence as a matter of right and out of fundamental fairness, because, otherwise, due to claim forfeiture rules and the lack of federal habeas review of state law questions, dispositive review of state law issues might forever be foregone. But, Maryland law already provides for such a mandatory full appeal on the merits, as to both phases of death penalty cases, and such review was had in fact in this case.

The question then becomes whether due process and fundamental fairness require that there be full appellate review of post-conviction decisions. The answer is *no*. First, as to any pure issue of law cognizable on federal habeas corpus, which must by definition be a federal constitutional issue, the federal trial and appellate courts undertake *de novo* review, making the state appellate process essentially inconsequential as to those federal law issues. Second, on mixed questions of fact and federal law, such as the adequacy of counsel questions that pervade this and most other federal habeas corpus cases, the only factual determinations that are of consequence are those of historical fact made by the state courts, which federal law presumes to be correct if the state court proceedings afforded a full and fair opportunity to be heard, 28 U.S.C. § 2254(d). In determining whether the findings should be given presumptive weight under § 2254(d), state appellate review is inconsequential, because the federal habeas court must independently determine whether § 2254(d)'s presumption is operative in a particular case. As for the purely legal determinations in Sixth Amendment cases, these are made *de novo* in the federal courts, as was made clear in *Clozza v. Murray*, 913 F.2d 1092, 1100 (4th Cir.1990), *cert. denied*, 499 U.S. 913, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991).

Consequently, there is simply no good reason to alter years of fundamental understanding about the relationship of the state and federal judicial processes by imposing upon the states a constitutional requirement that they afford plenary appellate review in capital—or any other—post-conviction cases. This discussion also demonstrates that there is no basis to award the relief sought in petitioner's first amendment to his petition, *viz.*, an order from this Court that the Court of Appeals of Maryland grant full review of the post-conviction proceedings.

Petitioner next contends that his rights were violated by the state court's refusal to charge the re-sentencing jury that he was eligible for a sentence of life without parole. This contention borders on the frivolous because, as a matter of Maryland law, he was not so eligible. The Court of Appeals of Maryland, in a decision not open to federal collateral review, has determined as a matter of Maryland law that the sentence of life without parole cannot be imposed upon a person convicted before the effective date of the governing statute, *viz.*, July 1, 1987, as was Mr. Hunt. *Collins v. State*, 318 Md. 269, 298, 568 A.2d 1, 15, *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 805 (1990). The question of whether *Collins* was rightly or wrongly decided is not and cannot be before this federal habeas Court, and the simple fact that, under Maryland law, the sentence of life imprisonment without parole could not have been imposed on this petitioner puts the *quietus* upon his second contention.

Petitioner's next contention is that he was wrongly deprived of pretrial disclosure of potentially exculpatory evidence, in violation of the rule in *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in the form of a police report describing the presence of a marijuana cigarette in the ash tray of the stolen car occupied by Hunt before the shooting of the policeman. Upon review of the opinion of the post-conviction judge on this point, Pet.Exh. 1, at 37–38, the Court agrees that there was no evidence produced to the effect that the State failed to disclose evidence of the cigarette butt, a finding supported by the record of the post-

conviction hearing. That hearing was a full and fair proceeding, with counsel provided to the petitioner, that lasted for days. Thus, the state court judge's finding is entitled to acceptance here, there being no indication that any of the statutory criteria for rejecting it, as laid out in 28 U.S.C. § 2254(d), are present in this case. Furthermore, on *de novo* review, this Court is satisfied that there is no reasonable probability that this evidence would have changed the outcome. *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383. In this regard, though not binding, the state post-conviction judge's discussion, Pet.Exh. 1 at 26–27, is instructive, and this Court quite agrees that evidence of Hunt's possible use of marijuana could not conceivably have affected the outcome of this trial, in which his use of other, more powerful drugs was before the jury and relied upon, unsuccessfully, as a defense. To the extent that petitioner argues that the butt itself should have been preserved, the argument lacks merit. *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

 The petitioner's next contentions are many, and they all are made under the Sixth Amendment's guarantee of the right to counsel. That guarantee, of course, is fleshed out by the requirement that counsel, at all stages of the proceeding, furnish competent representation, which means representation within the range reasonably to be expected of counsel in criminal cases. This is an objective criterion. *Strickland v. Washington,* 466 U.S. 668, 687–91, 104 S.Ct. 2052, 2064–66, 80 L.Ed.2d 674 (1984). There is, of course, a presumption of competence, and the inferior federal courts have been instructed in *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2065, to be highly deferential in reviewing the performance of counsel, eschewing the temptation to second-guess unsuccessful tactics. Even if the petitioner demonstrates that counsel's performance was professionally deficient, relief is not to be given under *Strickland* unless he also establishes prejudice, which means establishing a reasonable probability (sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of

the proceeding would have been different. 466 U.S. at 694, 104 S.Ct. at 2068. Furthermore, the state court's findings of historical fact, arrived at after a full and fair hearing, are entitled to acceptance by this Court, *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070, although this Court must then independently arrive at the ultimate legal conclusions relevant to the *Strickland* inquiry. With these criteria in mind, the Court turns to the manifold claims of professional lapses of their predecessors raised by habeas counsel.

 The Court will first examine the alleged inadequacies of trial counsel. The Court rejects the contention that trial counsel fell short of the required standard of competence because he failed to argue to the jury a single theory of defense. Counsel are permitted a wide range of tactical discretion under *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066. In this case, as in any case in which the evidence is overwhelming, the choice as to which course of defense is best pursued is a quintessentially tactical one, not to be second-guessed under *Strickland.* Here, as the respondent points out, had trial counsel conceded criminal agency and relied solely on the drug defense and lost, he also would no doubt have been second-guessed for that tactical choice. Here, counsel properly chose to argue all non-ridiculous theories of defense, and the PCPA expert witnesses' second-guessing of his tactics does not alter the fact that they were just that—tactics— that did not amount to a lapse of professionally reasonable conduct.

 Next, reservation of opening statement is also a fundamentally tactical decision, allowing counsel to sit back and see what the State has proved before committing himself to what he hopes to prove in his case-in-chief. Not only, in this case, was this tactical decision within the range of reasonably competent representation, but no *Strickland* prejudice is shown to have resulted from it.

 The Court next addresses the contention that trial counsel failed vigorously to pursue, through cross examination of Stokes and Franklin and discovery and ad-

mission of a hand-rolled marijuana cigarette, the petitioner's possible intoxication by marijuana and cocaine, as well as PCP. The Court has examined the record, and it is convinced that counsel did not fall short of the Sixth Amendment in this regard. The real issue here was PCP intoxication, which the defense, albeit unsuccessfully, attempted to sell to the jury as a form of drug craze that ought to eliminate a finding of premeditation. Under the circumstances, failure to confuse the issue with questions about other possible narcotics consumption was not only a sound tactical decision, but results in no *reasonable* probability that the outcome of the guilt/innocence phase was affected. The Court also perceives no Sixth Amendment deficiency in the trial defense's handling of the prosecution witnesses McGuigan and McNair. Given the PCPA testimony of McGuigan that she would not have spoken to Hunt's counsel before trial, and given the actual cross-examination of the witnesses and the argument to the jury on their testimony made by the defense, the Court perceives no unreasonable conduct, nor is there any reasonable probability of a different outcome, had counsel's performance been more to the petitioner's experts' liking. Likewise, counsel's tactical decision to inquire of Franklin about possible animosity towards Hunt growing out of a previous period of incarceration was not professionally unreasonable, and there is no reasonable probability that it affected the verdict. The Court also reaches the same conclusion as to counsel's handling of the prosecution comment about the murder weapon as a "trophy." Deciding whether to interrupt an opponent's closing argument is a tactical decision, for, even if the objection is sustained and a curative instruction given, it might well draw unwarranted jury attention to the comment, which is often better left to sit unnoticed. Furthermore, there is no reasonable probability of a different outcome on account of this failure.

■ The Court, in short, has considered all of the claims now pressed as to counsel's alleged inadequacies at the guilt/innocence phase, and it is of the opinion that none of them amounts to a Sixth Amendment violation under prevailing law, even if the defense could have been presented in a better or different way. If *Strickland's* admonitions about respecting the tactical decisions of counsel—as well as the fact that lawyers are individuals, some not as perfect as others—are not to become hollow rhetoric, the federal habeas court must resist the temptation to Monday-morning quarterback trials, even capital trials. As the Court of Appeals observed in *Gilliam v. State,* 331 Md. 651, 686, 629 A.2d 685, 703 (1993), *cert. denied,* ——— U.S. ———, 114 S.Ct. 891, 127 L.Ed.2d 84 (1994), the fact that many claims of counsel error are pressed does not alter fundamental math—a string of zeros still adds up to zero.

The Court next applies the Sixth Amendment to claims of ineffective assistance of counsel at the capital resentencing.

■ First, the Court accepts the factual findings, *see Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), of the Court of Appeals of Maryland on the issue of the failure of resentencing counsel to press the matter of the twenty-year handgun sentence. This Court, *on its independent review,* also agrees with the legal conclusions of the Court of Appeals in this regard. The relevant discussion is set forth in the opinion of the Court of Appeals affirming the capital resentencing, 321 Md. at 406, 583 A.2d at 226, wherein the Court of Appeals concluded that any error in this regard, which would essentially have resulted only in a one-year difference in possible parole release dates, could not have amounted to *Strickland* prejudice, in the sense of any *reasonable* probability of an effect on the outcome. This Court, on its *de novo* legal review of the prejudice prong of *Strickland,* quite agrees with the Court of Appeals of Maryland, despite petitioner's argument in reply that that court's discussion was *dictum.* *Dictum* or not, it is persuasive, and this Court agrees with it.

■ Next, petitioner faults the leg-iron shackling of Mr. Hunt during the resentencing. Given that counsel took reasonable steps to protest the situation, given that Hunt had already been convicted of first-degree murder, and given Judge Angeletti's testimony, which the PCPA judge accepted, there was neither professional delinquency by counsel, nor a reasonable probability of

any difference in the outcome with reference to the shackling issue.

■ Petitioner also faults resentencing counsel for failure to present evidence as to Hunt's specific eligibility for parole. Counsel testified on PCPA, and the trial judge accepted, that this was a conscious tactical decision, for deliberate purposes, including the assessment of victim impact on the policeman's widow. Resp. Ex. 28 at 153–55. This is just the sort of tactical decision that is within the range of competence allowed by *Strickland*, and there is, in this Court's judgment, no reasonable probability that it affected the outcome.

■ The Court also has considered, but rejects, the arguments made as to the marijuana cigarette butt and the development of the factual basis for Dr. Balster's testimony. As to the former, the Court concludes that there is no reasonable probability that, had that evidence been introduced, the resentencing jury would not have imposed the death penalty. The jury was privy to considerable evidence of Hunt's drug use, including his use of the powerful drug PCP. The Court sees no reasonable probability that Hunt would have been spared the death sentence had the single "roach" been relied upon at the capital re-sentencing as a reinforcement of the drug intoxication "mitigator." The Court cannot conceive of a jury's being moved to mercy because of this evidence. Thus, *Strickland* prejudice is absent. As to the Balster issue, the Court finds no professional lapse of counsel or prejudice as a result, after examining the direct testimony of Dr. Balster at Resp.Ex. 20, pp. 19–38.

■ Petitioner also contends that the state post-conviction judge erred in substituting his expertise on the law for that of two legal experts called at the post-conviction hearing to establish petitioner's claim of ineffective assistance of counsel. Again, the contention borders on frivolity, in light of the well-settled rule, fully applicable to *this* contention, that claims of error in the conduct of post-conviction proceedings are not cognizable on federal habeas corpus review. *Bryant v. Maryland, supra.*

■ Petitioner next argues that the death penalty statute of Maryland is unconstitutional, because it allows the death penalty to be imposed on a preponderance standard, rather than a higher standard of proof. This contention is not only unsupported by authority, but is counter to the well-settled body of law, in both capital and non-capital cases, that sentencing proceedings are constitutionally subject only to a preponderance standard. *See, e.g., McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *State v. Calhoun,* 306 Md. 692, 739–40, 511 A.2d 461, 485 (1986), *cert. denied,* 480 U.S. 910, 107 S.Ct. 1339, 94 L.Ed.2d 528 (1987). *See also Walton v. Arizona,* 497 U.S. 639, 656–74, 110 S.Ct. 3047, 3058–68, 111 L.Ed.2d 511 (1990).

■ Next, petitioner mounts a frontal assault on the two possible modes of execution under Maryland law, lethal gas and lethal injection, arguing that both are unconstitutional, at least in part because they are unnecessarily cruel. One wonders what method would *not* be unconstitutional under this line of reasoning, considering that both gassing and lethal injection are vast improvements, intended as more humane, upon the method of execution previously used in Maryland, *viz.,* hanging by the neck. Though difficult, this choice is certainly not made inherently cruel or unusual simply because it offers two unpleasant alternatives to a condemned person who would prefer to select "neither of the above." The Court is utterly unpersuaded by Dr. Cheatham's affidavit to find any inherent constitutional violation in giving an inmate sentenced under an earlier method of execution his choice to take that one or to adopt a later-enacted one.

■ In that the petitioner has, by written election made after this petition was filed, timely exercised his one-time statutory right to choose execution by lethal gas, his arguments going solely to the validity of the statute authorizing lethal injection are moot, except any argument that the option of lethal injection is itself cruel and unusual. *Campbell v. Wood,* 18 F.3d 662, 688 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994). For the reasons given by the *Campbell* court, *id.,* this

Court rejects any notion that the lethal injection option by its very existence constitutes cruel and unusual punishment for this petitioner.

 The Court, to the extent that petitioner contends that lethal gas execution is by its very nature cruel and unusual, will not grant relief. First, petitioner could have presented this contention at the many state court proceedings to which he has been a party, all the while represented by counsel, and there is not the slightest hint of cause or prejudice excusing this default. Thus, the contention is unavailable as a ground for federal habeas corpus relief, under well-settled principles. *See, e.g., Gomez v. U.S. District Court,* — U.S. —, —, 112 S.Ct. 1652, 1653, 118 L.Ed.2d 293 (1992). Even if this Court were to go on to address the issue on the merits, the petitioner has not begun to demonstrate, by citation to any case law, that execution by lethal gas has been held to violate the evolving standards of decency test by which Eighth Amendment claims are to be judged in general, *cf. Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), or the "excessiveness" standard by which claims of inappropriate punishment are to be judged, *see Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976), or the standard of involving the unnecessary and wanton infliction of pain, by which methods of execution have been recently judged. *Campbell v. Wood, supra,* at 683. In fact, lethal gas administration has been consistently held *not* violative of the Eighth Amendment. *See, e.g., Calhoun v. State,* 297 Md. 563, 612–17, 468 A.2d 45, 68–70 (1983); *State v. Lopez,* 175 Ariz. 407, 857 P.2d 1261, 1271 (1993), *cert. denied,* — U.S. —, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994). Just because there are other, newer modes of execution thought by some to be more humane (such as lethal injection, eschewed by petitioner in this case) does not mean that the gas chamber has become unconstitutional. Indeed, in *Campbell, supra,* the Ninth Circuit held that *hanging* was not cruel and unusual punishment in 1994. Certainly, the district courts are not obliged to hold plenary proceedings to test the constitutionality of a means of execution in every case simply because it is claimed to be outmoded or can be botched. Many of the affidavits submitted by petitioner have the look of having been recycled from a 1992 California case. Their graphic descriptions of the death throes of inmates executed by gas are full of prose calculated to invoke sympathy, but insufficient to demonstrate that execution by the administration of gas involves the *wanton* and unnecessary infliction of pain.