PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SHAWN PETHTEL,

       *Petitioner-Appellant,*

    v.

WARDEN DAVID BALLARD,

       *Respondent-Appellee.*

No. 09-6075

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(1:07-cv-00074-IMK-JSK)

Argued: May 12, 2010

Decided: August 18, 2010

Before SHEDD, DUNCAN, and AGEE, Circuit Judges.

---

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Shedd and Judge Duncan joined.

---

## COUNSEL

**ARGUED**: Steven Harris Goldblatt, Director, GEORGE-TOWN UNIVERSITY LAW CENTER, Appellate Litigation Program, Washington, D.C., for Appellant. Robert David Goldberg, OFFICE OF THE ATTORNEY GENERAL, Charleston, West Virginia, for Appellee. **ON BRIEF:** Char-

lotte Garden, Supervising Attorney, Kate Bushman, Supervising Attorney, Edward W. Duffy, Student Counsel, Elena M. Romerdahl, Student Counsel, GEORGETOWN UNIVERSITY LAW CENTER, Appellate Litigation Program, Washington, D.C., for Appellant. Darrell V. McGraw, Jr., Attorney General, Charleston, West Virginia, for Appellee.

---

## OPINION

AGEE, Circuit Judge:

Shawn Pethtel ("Pethtel") appeals the judgment of the United States District Court for the Northern District of West Virginia, which denied relief on Pethtel's petition for a writ of habeas corpus (hereinafter "habeas petition") pursuant to 28 U.S.C. § 2254 (2006). For the following reasons, we affirm the judgment of the district court.

I.

In September 1999, Pethtel was charged in West Virginia with twenty counts of sexual assault in the third degree, three counts of filming a minor engaged in sexually explicit conduct, two counts of possession with the intent to deliver a controlled substance, two counts of conspiracy to commit the felony offense of delivery of a controlled substance, one count of conspiracy to commit nighttime burglary, one count of conspiracy to film a minor engaging in sexually explicit conduct, one count of grand larceny, and one count of conspiracy to commit grand larceny.

At the time the indictment was returned in West Virginia, Pethtel was already serving a sentence in Ohio for unrelated charges. West Virginia lodged a detainer against Pethtel with Ohio, and Pethtel sought voluntary return to West Virginia to dispose of the West Virginia charges. Pethtel was extradited

to West Virginia for arraignment; however, he was returned to Ohio shortly after his arraignment and before final disposition of the West Virginia charges.

Upon return to Ohio, Pethtel made a motion in the West Virginia trial court to dismiss the West Virginia charges with prejudice, claiming a violation of the "anti-shuttling" or "trial before return provision" of the Interstate Agreement on Detainers Act ("IADA").[1] After multiple hearings, the West Virginia trial court denied the motion to dismiss, holding that Pethtel "did not languish in the court system in West Virginia," and finding that West Virginia "operated under the assumption that he was going back [to Ohio] for a probation hearing of some sort that would allure [sic] to his benefit." (J.A. 213).

Pethtel pled guilty in West Virginia to the burglary charge and to one count of possession of marijuana with intent to deliver. He was then convicted in a jury trial of a total of twenty-six felony offenses, including the sexual assault, filming a minor, and conspiracy charges. The remaining charges were dismissed. Pethtel was sentenced to 53 to 155 years' imprisonment.

Pethtel filed a direct appeal with the West Virginia Supreme Court of Appeals ("WVSCA"), asserting in relevant part that "the trial court erred when it refused to dismiss the

---

[1]The IADA is a compact among 48 states, the District of Columbia, and the federal government with the aim of establishing procedures for resolution of one jurisdiction's outstanding criminal charges against another jurisdiction's prisoner. *See New York v. Hill*, 528 U.S. 110, 111 (2000). West Virginia is a participating state, *see* W. Va. Code Ann. §§ 62-14-1 to 62-14-7 (West 2010), as is Ohio. *See* Ohio Revised Code Ann. §§ 2963.30 to 2963.35 (West 2010).

The trial before return provision requires that the prisoner be tried on the charges in the receiving state before he is returned to the sending state. The remedy for violation of the provision is dismissal with prejudice of any untried charges. *See* W. Va. Code § 62-14-1, Art. III(d).

charges against the petitioner after his rights under the [IADA] were violated." (J.A. 55).[2] Citing *Alabama v. Bozeman*, 533 U.S. 146 (2001), Pethel contended that case "rejected all of the exceptions utilized by various states and held the language of the agreement (IADA) militates against an implicit exception, for it is absolute." (J.A. 60) (emphasis omitted) (internal quotations omitted). The WVSCA refused Pethtel's petition for appeal by order but without an opinion.

Pethtel also filed a petition for a writ of habeas corpus in the West Virginia trial court, asserting that his convictions must be vacated due to the alleged IADA violation. The trial court granted the petition and vacated his convictions, finding that West Virginia violated the IADA, and holding that "[t]his Court has no discretion in applying the harsh remedies of the [IADA] for the violation, as mandated by *Alabama v. Bozeman* and accordingly, the Court finds that the only appropriate remedy is dismissal, with prejudice, of all counts of the Indictment." (J.A. 84).

West Virginia appealed that decision to the WVSCA, which reversed the trial court's grant of habeas relief in a published opinion. Relying in part on this Court's decision in *Bush v. Muncy*, 659 F.2d 402 (4th Cir. 1981), the WVSCA held that "any rights created by the provisions of the [IADA] are rights which are statutory in nature and which clearly do not give rise to the level of right guaranteed by either the Constitution of West Virginia or the Constitution of the United States." *Pethel*[3] *v. McBride*, 638 S.E.2d 727, 739 (W.Va. 2006) (emphasis omitted). Instead, "[t]hey are procedural technicalities which do not affect a trial court's power." *Id.* at 743. Thus, the WVSCA found that "[t]he violation of the

---

[2]Pethtel also argued that he received ineffective assistance of counsel and that his sentence was unconstitutionally disproportionate. However, he does not raise those issues in this appeal.

[3]We note that Appellant's name was spelled differently in the WVSCA opinion.

IAD[A] alleged herein did not impact the fairness of Pethel's trial or lead to the incarceration of an innocent man. Habeas relief is simply not available, under West Virginia law, to remedy a violation of a procedural technicality, such as the violation of a statutory IAD[A] provision." *Id.*

Pethtel then filed a § 2254 petition for habeas relief in the district court asserting that the IADA "was violated when, pursuant to Article III(a) of the IAD[A], the Petitioner requested final disposition of his case in West Virginia while imprisoned in Ohio. Specifically, the 'anti-shuttling' provision of the IAD[A] . . . was violated in that the Petitioner was transferred to West Virginia, and then back to Ohio, before his West Virginia case was finished."[4] (J.A. 7) (emphasis omitted). The magistrate judge held that Pethtel "is simply not afforded federal habeas relief on [the IADA] issue," pursuant to *Bush*, (J.A. 438), and noted that the *Bush* Court "found that the anti-shuttling provision [of the IADA] does not involve a 'fundamental right historically considered critical to the protection of the criminal accused against the unfair prosecution and trial by the state.'" (J.A. 439-40). The magistrate judge concluded that "[w]hether or not this Court concurs with the opinion of the Fourth Circuit, . . . the Court is nevertheless constrained to its finding and must deny the petitioner's claimed IADA violation." (J.A. 440-41).

The district court adopted the magistrate judge's recommendation, holding that, while a "violation of the IADA occurred in Pethtel's case" and "Pethtel [was not] afforded meaningful review on his direct appeal," relief was nonetheless unavailable pursuant to *Bush*. (J.A. 451). The district court found that "this Court's power to grant habeas relief . . . is constrained by the Fourth Circuit's holding in *Bush* that a violation of the anti-shuttling provision of the IADA 'does not constitute a fundamental defect entitling a petitioner to habeas

---

[4]Pethtel also made the argument that he was denied effective assistance of counsel; however, that issue is not raised in this appeal.

relief under section 2254.'" (J.A. 451-52) (quoting *Bush*, 659 F.2d at 408). Accordingly, the district court denied Pethtel's habeas petition.

Pethtel requested a certificate of appealability ("COA") from the district court, pursuant to 28 U.S.C. § 2253(c)(1) (2006). In his application, Pethtel continued to assert that he was entitled to habeas relief due to the alleged IADA violation, arguing that "[i]n this case, the U.S. District Court relied exclusively on *Bush v. Muncy* to deny petitioner's application for post-conviction relief without giving meaning [sic] consideration to petitioner's claim that exceptional circumstances warrant habeas corpus relief." (J.A. 462). For the first time during proceedings in either state or federal court, Pethtel also argued that he had "never had any meaningful direct review" of his IADA claims. (J.A. 460).

The district court granted a COA, which was construed as a timely notice of appeal pursuant to *Smith v. Barry*, 502 U.S. 244, 248-49 (1992), as to the following questions: (1) whether Pethtel was entitled to habeas relief as to his IADA claims (J.A. 480), and (2) "whether Pethtel has been afforded adequate procedural due process." (J.A. 479-80).[5] This Court has jurisdiction over Pethtel's appeal, pursuant to 28 U.S.C. §§ 1291 and 2253.

## II.

### A.

Pethtel first argues that he is entitled to habeas relief on his claim that the trial before return provision of the IADA was violated (hereinafter "IADA claim"). Pethtel contends that "the WVSCA's arbitrary refusal to redress the IADA violation is the type of fundamental defect that is redressable, even

---

[5]This was the first explicit mention of a due process claim during Pethtel's proceedings in either state or federal court.

when the underlying statutory claim is not generally review-able in habeas corpus." (Appellant's Br. 28). Although Pethtel recognizes that the *Bush* decision directs that a violation of the trial before return provisions of the IADA is not cogniza-ble on habeas corpus review, he contends that the Supreme Court's decisions in *Reed v. Farley*, 512 U.S. 339 (1994), and *Bozeman* modify or overrule *Bush*'s holding.[6]

Specifically, Pethtel asserts that *Reed* recognized an IADA claim as cognizable in habeas if it is accompanied by "aggra-vating" or "exceptional" circumstances. Pethtel insists that his case was accompanied by such circumstances; namely, (1) "[t]he West Virginia trial court returned Pethtel to Ohio to save the state money, an impermissible consideration . . . , and then made wholly unsupported findings that Pethtel was returned to Ohio for his own benefit, seemingly to conceal the IADA violation," (Appellant's Br. 31); (2) "[t]he WVSCA denied Pethtel's petition for direct review without explana-tion, even though the validity of the claim was apparent," (Appellant's Br. 33); and (3) due to "the WVSCA's unreason-able and incorrect application of established federal and state law on habeas review." (Appellant's Br. 37).

The decision of a district court on a matter of habeas corpus relief is reviewed *de novo* and under the standards set forth in 28 U.S.C. § 2254. *Bell v. Ozmint*, 332 F.3d 229, 233 (4th Cir. 2003).

It is a fundamental principle of habeas review that not "every asserted error of law can be raised on a [§ 2254] motion." *Davis v. United States*, 417 U.S. 333, 346 (1974).

---

[6]*See Etheridge v. Norfolk & Western Ry. Co.*, 9 F.3d 1087, 1090 (4th Cir. 1993) ("A decision of a panel of this court becomes the law of the cir-cuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or 'a superseding contrary decision of the Supreme Court.'" (quoting *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 840-41 (4th Cir. 1990))).

Instead, "habeas review is available to check violations of federal laws when the error qualifies as 'a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" *Reed*, 512 U.S. at 348 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962) (alteration in original)).

This standard arose from *Hill v. United States*, 368 U.S. 424 (1962), in which the Supreme Court held the failure to ask a defendant if he wished to exercise the right of allocution was not cognizable on habeas review. The Court provided the following explanation: "It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Id.* at 428 (quoting *Bowen v. Johnston*, 306 U.S. 19, 27 (1939)).

The Supreme Court again addressed the lack of cognizable error on habeas review in *United States v. Timmreck*, 441 U.S. 780 (1979). The Court stated that only an error that "resulted in a 'complete miscarriage of justice' or in a proceeding inconsistent with the rudimentary demands of fair procedure'" is reviewable in a habeas proceeding. *Id.* at 784 (quoting *Hill*, 368 U.S. at 428). As to whether any other claim could be reviewed, the Court declined to consider that issue: "As in *Hill*, we find it unnecessary to consider whether § 2255 relief would be available if a violation of Rule 11 occurred in the context of other aggravating circumstances." *Timmreck*, 441 U.S. at 784-85.

Applying *Hill* and its progeny, the *Bush* Court found that "a violation of the trial-before-return provisions of article IV(e)[7]

---

[7]The anti-shuttling or trial before return provisions of Article IV and Article III of the IADA are materially similar to one another; in fact, at one point the *Bush* Court comingled the two provisions. *See Bush*, 659 F.2d at 408 n.4.

[of the IADA] does not constitute a fundamental defect entitling a petitioner to habeas relief under section 2254." 659 F.2d at 408. This is because "only those statutory rights of a fundamental nature closely related to constitutionally secured rights to fair prosecution and adjudication should be subject to vindication by collateral review," and "because [the IADA provision] does not involve any fundamental right historically considered critical to the protection of the criminal accused against unfair prosecution and trial by the state, [a violation] is not . . . subject to collateral review." *Id.* at 409. Therefore, the clear Fourth Circuit precedent set forth by *Bush*'s unequivocal holding directs that a violation of the IADA's trial before return provision is not cognizable on federal habeas review.

The Supreme Court in *Reed* addressed a similar question to that in *Bush* and the case at bar as to whether the so-called "speedy trial" provision of the IADA[8] "may [be] enforce[d] . . . in a federal habeas corpus action under 28 U.S.C. § 2254." *Reed*, 512 U.S. at 342. In that case, the state of Indiana violated the IADA by failing to commence the trial of a prisoner in custody for 54 days beyond the 120-day limit, although the defendant "registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement." *Id.* Citing *Hill* and *Davis*, the *Reed* Court held that such a violation was not an "error [that] qualifies as 'a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" *Id.* at 348 (quoting *Hill*, 368 U.S. at 428). After noting that *Hill* and *Timmreck* had "left open the question whether collateral relief would be available if a violation of [federal law] occurred in the context of other aggravating circumstances," *Reed*, 512

---

[8]The speedy trial provision "provides that trial of a transferred prisoner 'shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court . . . .'" *Reed*, 512 U.S. at 341 (quoting IADA Article IV(c)).

U.S. at 350 (quoting *Timmreck*, 441 U.S. at 784-85), the plurality opinion concluded "Reed's case similarly lacks 'aggravating circumstances' rendering 'the need for the remedy afforded by the writ of habeas corpus . . . apparent.'" *Reed*, 512 U.S. at 350 (quoting *Hill*, 368 U.S. at 428).

Although this language in *Reed* ostensibly recognizes some exception to the bar on collateral review where a violation of federal law "occurred in the context of other aggravating circumstances," *Hill*, 368 U.S. at 429, the Court never expressly adopted that exception or defined its parameters. Indeed, *Reed*'s plurality and concurring opinions disagreed about what would constitute "aggravating circumstances." *See Reed*, 512 U.S. at 357 (Scalia, J., concurring) ("As for *Hill* and *Timmreck*'s reservation of the question whether habeas would be available 'in the context of other aggravating circumstances,' that seems to me clearly a reference to circumstances that cause additional prejudice to the defendant, thereby elevating the error to a fundamental defect or a denial of rudimentary procedural requirements—not a reference to circumstances that make the trial judge's behavior more willful or egregious." (emphasis omitted)). We thus conclude that *Reed* does not provide a sufficient basis to allow us to circumvent our clear precedent in *Bush* and conclude that Pethtel's asserted IADA violation should be cognizable on habeas review.

Nor did the Supreme Court's holding in *Bozeman* call *Bush* into question. *Bozeman* was a direct appeal from state court and involved no issues of collateral review. Instead, *Bozeman* analyzed the question of what constitutes a violation of the trial before return provision of the IADA; namely, whether a *de minimis* exception exists. *Bozeman*, 533 U.S. at 153. The *Bozeman* Court concluded that no *de minimis* exception exists, as "the language of the [IADA] militates against an implicit exception, for it is absolute. It says that [when a violation occurs], the indictment, information, or complaint 'shall not be of any further force or effect, and the court shall enter

an order dismissing the same with prejudice." *Id.* (quoting IADA Art. IV(e)) (emphasis added)).

Pethtel argues that *Bozeman* abrogates *Bush* insofar as it holds that there exist no insignificant violations of the IADA. However, *Bozeman* dealt with a matter of statutory construction and never addressed whether such nonconstitutional error unrelated to the underlying criminal charge could be "a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428. The resolution of the question in *Bozeman* has no nexus to the standards relevant in a habeas proceeding as evidenced by the understandable absence in *Bozeman* of any discussion of collateral review or the case precedent represented by *Hill, Reed*, and similar cases. Obviously, there was no basis for such a discussion because the direct appeal issue of the statute's construction would have no connection to the standards in habeas review. Accordingly, we find that *Bozeman* did not call *Bush* into question, as it dealt with a different question entirely.

Although we recognize West Virginia likely did violate the IADA in this case, we are constrained by the clear precedent set by this Court's decision in *Bush*, which remains controlling and is dispositive of this case. *See United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005). Thus, the district court did not err in holding a violation of the trial before return provision of the IADA was not cognizable on habeas review.

B.

Pethtel next argues that, even if an IADA violation is not cognizable on habeas review in its own right, it is reviewable if "the state courts' refusal to enforce the IADA violated clearly established principles of fundamental due process." (hereinafter "due process claim.") (Appellant's Br. 39). Peth-

tel asserts that two of his liberty interests were denied arbitrarily in violation of his due process rights: his right to relief under the IADA and his "right to a meaningful appeal of his conviction and sentence of imprisonment." (Appellant's Br. 40). He alleges that, although West Virginia's appeals process "when functioning properly" may be sufficient, in this case it was "reduced to a meaningless ritual that was fundamentally unfair." (Appellant's Br. 44) (emphasis omitted). Specifically, Pethtel asserts that the West Virginia circuit court "made findings of fact that were entirely without support in the record," (Appellant's Br. 45); and that "the WVSCA arbitrarily refused Pethtel's petition for direct appeal, despite the fact that the [IADA] violation should have been readily apparent." (Appellant's Br. 46).

Although the district court did certify this question for appeal, we find that Pethtel has waived his due process claim by failing to raise the issue in state court. "[A] federal habeas court may consider only those issues which have been 'fairly presented' to the state courts." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). Although the claims presented need not be "identical," *see Ramdass v. Angelone*, 187 F.3d 396, 409 (4th Cir. 1999), the petitioner must present the "'substance' of his federal habeas corpus claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). Presenting the "substance" of the claim requires that the claim "be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)). "In other words, fair presentation contemplates that 'both the operative facts' and the 'controlling legal principles' must be presented to the state court." *Matthews*, 105 F.3d at 911 (quoting *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992)).

This Court's decision in *Ramdass* is instructive on this issue. The petitioner in that case made the claim in his state

habeas petition that "his rights under the state statute [at issue] had been denied." *Ramdass*, 187 F.3d at 409. However, on federal habeas review, Ramdass also made a "due process claim for the arbitrary enforcement of [the] state statute." *Id.* We found that Ramdass' "due process claim for the arbitrary enforcement of a state statute was defaulted because . . . Ramdass did not make the further argument, necessary to make the claim cognizable on federal habeas review, that this denial constituted a violation of his right to due process under the Fourteenth Amendment." *Id.* Analogously, while Pethtel presented the core IADA claim to the WVSCA, Pethtel did not make the argument that his rights were deprived arbitrarily in violation of due process.

Therefore, we find that Pethtel did not "fairly present" the due process claim to the state court. Although the underlying facts for the IADA claim and the due process claim were the same, the "controlling legal principles" of the due process claim—whether the state courts arbitrarily deprived Pethtel of his due process rights and whether he received meaningful appellate review—were never raised in state court. *See Mallory*, 27 F.3d at 994 (holding that "[a] habeas petitioner cannot simply apprise the state court of the facts underlying a claimed constitutional violation, the petitioner must also explain how those alleged events establish a violation of his constitutional rights") (internal citation omitted).[9]

## C.

Finally, Pethtel "challenges the constitutionality of the West Virginia system of appellate review under which he was denied relief," (Appellant's Br. 48), although he recognizes that this panel is bound by *Billotti v. Legursky*, 975 F.2d 113 (4th Cir. 1992).

---

[9]The conclusion that Pethtel has waived this claim is underscored by his failure to raise the issue not only in state court, but also in federal court. A recognizable due process argument did not appear until raised *sua sponte* by the district court in the order granting the COA.

Applicable Fourth Circuit precedent clearly holds that "the appeals procedures afforded by West Virginia [give a defendant] an adequate opportunity to present his claims." *Billotti*, 975 F.2d at 115. Although the West Virginia "Supreme Court of Appeals provides the sole avenue of appellate review [and] [t]he decision to grant an appeal is discretionary with that court[,] . . . the right to petition for appeal . . . is accompanied by an array of procedural protections." *Id.* Therefore, West Virginia's procedures "serve the needs of the state which adopted them, and . . . they afford an ample measure of procedural fairness to criminal defendants seeking an appeal." *Id.* at 116.

### III.

For the foregoing reasons we hold that, consistent with this Court's precedent as set forth in *Bush*, a violation of the trial before return provision of the IADA is not cognizable on habeas review. We further hold that Pethtel has waived his due process claim. Therefore, the judgment of the district court is

*AFFIRMED*.